1  EDWARD G. SCHLOSS CA Bar No. 102858
   LIOR KATZ CA Bar No. 284559
2  3637 Motor Avenue, Suite 220
   Los Angeles, California 90034
3  (310) 733-4488
4  B24645/lk

5  Attorneys for Secured Creditor
   BAYVIEW LOAN SERVICING, LLC, servicing agent
6  for The Bank of New York Mellon fka The Bank of
   New York As Trustee for the Certificateholders CWMBS, Inc.
7  CHL, Mortgage Pass-Through Trust 2005-HYB 10 Mortgage
   Pass-Through Certificates, Series 2005-HYB 10
8

9
                  UNITED STATES BANKRUPTCY COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12

13  In re                                    Bk. No. 2:14-bk-10349-ER

14  JACQUELINE DESIREE LANDAETZ              Chapter 11
    ALVAREZ,
15                                           OPPOSITION TO DEBTOR'S MOTION
                                             FOR ORDER DETERMINING VALUE OF
16              Debtor.                       COLLATERAL [11 U.S.C. §506(a), FRBP
                                             3012]
17
                                             Hearing:
18                                           Date:  December 10, 2014
                                             Time:  10:00 a.m.
19                                           Place: U.S. Bankruptcy Court
                                                    255 E. Temple Street
20                                                  Courtroom 1568
                                                    Los Angeles, California 90012
21
                                             Honorable Ernest M. Robles
22

23      Secured Creditor, BAYVIEW LOAN SERVICING, servicing agent for The Bank of New

24  York Mellon fka The Bank of New York As Trustee for the Certificateholders CWMBS, Inc.

25  CHL, Mortgage Pass-Through Trust 2005-HYB 10 Mortgage Pass-Through Certificates, Series

26

2005-HYB 10 ("Secured Creditor" herein), the <u>first</u> trust deed holder secured by the subject real property (which is *purportedly* Debtor's rental property) located at **10580 Horse Creek Avenue, Shadow Hills, CA 91040**, hereby submits the following opposition to the Debtor's Motion for Order Determining Value of Collateral ("Motion to Value" herein), which was filed on November 13, 2014 as docket item no. 80.

1. Secured Creditor is the holder of the <u>first</u> trust deed loan secured by the subject real property, which is a generally described as **10580 Horse Creek Avenue, Shadow Hills, CA 91040** ("subject property"). The subject deed of trust was recorded on October 19, 2005 and secures a Note dated October 12, 2005 in the original principal amount of 780,000.00. The original borrower under the subject Note is **Jorge E. Andrade,** <u>not</u> the Debtor. An Assignment of Deed of Trust was recorded on December 3, 2010, evidencing the transfer of beneficial interest in the deed of trust from Mortgage Electronic Registration Systems, Inc. to The Bank of New York Mellon fka The Bank of New York As Trustee for the Certificateholders CWMBS, Inc. CHL, Mortgage Pass-Through Trust 2005-HYB 10 Mortgage Pass-Through Certificates, Series 2005-HYB 10 ("BNY Mellon"). Bayview Loan Servicing, LLC is the servicing agent for BNY Mellon. The subject property is a *single family home* that is *purportedly* being rented by the Debtor.

2. The *instant* chapter 11 bankruptcy was originally filed as a chapter 7 case on January 7, 2014 and was converted to a chapter 11 on May 20, 2014. The instant bankruptcy is the **<u>seventh</u> <u>(7th)</u>** known bankruptcy to affect the subject property within approximately three (3) years, and the *third* bankruptcy filed by the Debtor within the past one (1) year.

3. The original borrower under Secured Creditor's loan is **Jorge E. Andrade,** <u>not the Debtor</u>. On June 1, 2010, Mr. Andrade filed a Chapter 13 bankruptcy in this Court (case # 1:10-bk-16577-VK), which was the <u>first</u> bankruptcy to affect the subject property. The <u>first</u> bankruptcy

1  was later *dismissed* on June 8, 2011. On November 28, 2011, Mr. Andrade filed a chapter 7

2  bankruptcy (case# 1:11-bk-23729-MT), which was the <u>second</u> bankruptcy to affect the subject

3  property. The <u>second</u> bankruptcy was dismissed on February 2, 2012 for failure to appear at the

4  341(a) meeting. On March 14, 2012, Mr. Andrade field a chapter 7 bankruptcy, which was the

5  <u>third</u> bankruptcy to affect the subject property (case # 2:12-bk-19130-RN). On April 2, 2012, Mr.

6  Andrade's <u>third</u> bankruptcy was dismissed for failure to file required information. On April 27,

7  2012, Mr. Andrade filed *another* chapter 7 bankruptcy (case# 2:12-bk-24969-ER), which was the

8  <u>fourth</u> bankruptcy to affect the subject property. Debtor received a discharge on February 27,

9  2014, and the <u>fourth</u> bankruptcy was terminated on March 5, 2014.

10

11      4. On February 1, 2013, Debtor filed a chapter 13 bankruptcy (case#1:13-bk-10716-VK),

12  which was the <u>fifth</u> bankruptcy to affect the subject property and the first bankruptcy filed by the

13  Debtor. The <u>fifth</u> bankruptcy to affect the subject property was dismissed on June 20, 2013.

14

15      5. On or about September 17, 2013, after he had filed four (4) bankruptcy cases of his own,

16  Mr. Andrade (the original borrower) transferred his interest in the subject property to **himself,** this

17  *Debtor* **Jacqueline Landaeta,** and **Edith Media** by a Grant Deed. Said Grant Deed was recorded

18  on September 19, 2013 with the Los Angeles County Recorder (instrument # 20131368894)

19  ("Grant Deed"). <u>Secured Creditor had no prior knowledge of the transfer of interest in the subject</u>

20  <u>property, and never authorized said transfer</u>. Secured Creditor's deed of trust forbids the transfer

21  of interest in the subject property without prior authorization of Secured Creditor. No such

22  authorization was sought in this case. The Debtor is a stranger to Secured Creditor and is not in

23  privity with Secured Creditor.

24

25      6. On September 19, 2013, the same day that the *bad-faith* Grant Deed was recorded, this

26  Debtor filed a chapter 7 bankruptcy (case# 2:13-bk-33234), which was the <u>sixth</u> bankruptcy to

affect the subject property and the second bankruptcy filed by the Debtor. The <u>sixth</u> bankruptcy was *dismissed* on September 26, 2013 for failure to file required information.

7. On January 7, 2014, Debtor filed the instant bankruptcy as a chapter 7. The instant bankruptcy is the <u>seventh</u> bankruptcy to affect the subject property, and the third (3rd) bankruptcy filed by the Debtor within a period of one (1) year. On January 11, 2014, Debtor filed a Motion to Continue or Impose the Stay (docket entry #7). Secured Creditor Opposed this Motion (docket entry #18), alleging that the Motion was scheduled to be heard after the deadline to have such motion filed and heard pursuant to 11 U.S.C. 362(c)(4)(A) and (c)(4)(B) (30 days after the filing of the bankruptcy). Secured Creditor also argued in its Opposition to the Motion to Continue or Impose the Stay that the Motion should be denied due to the bad-faith scheme of multiple bankruptcy filings and property transfer involving the Debtor and other co-conspirators. On April 21, 2014, the Court entered an Order Denying Debtor's Motion to Impose or Continue the Stay (docket #30).

8. On March 24, 2014, Secured Creditor filed a Motion for Relief from the Automatic Stay (docket #21). On April 23, 2014, the Court entered an Order granting Secured Creditor's Motion for Relief from Stay (docket #31). After Secured Creditor had obtained relief from the automatic stay, Debtor moved to convert the chapter 7 bankruptcy to a chapter 11.  An order converting the instant bankruptcy was entered on May 20, 2014. Debtor has not made *any* post-petition monthly mortgage payments to Secured Creditor since the filing of this case.

9. On July 15, 2014, Debtor filed a Motion to Use Cash Collateral (docket # 46), which provided that Debtor generated $3,500.00 in rental income from the subject property. Debtor moved for authorization to use Secured Creditor's cash collateral despite Secured Creditor's contention that Debtor is a bad-faith transferee of interest in the subject property via an

*unauthorized* Grant Deed. On July 30, 2014, Secured Creditor filed an Opposition to the Motion for Use of Cash Collateral (docket entry #56). The Court granted the Motion for Use of Cash Collateral by an Order entered on August 28, 2014 (docket entry #62) ("Cash Collateral Order"). The Cash Collateral Order provided that Debtor was required to tender monthly payments of $2,000.00 as adequate protection to Secured Creditor (while the payments that are due and owing are **$6,951.82** *each*). Debtor, however, is in breach of this Cash Collateral Order as not a single post-petition payment has been received from the Debtor since the  Cash Collateral Order was entered by the Court on August 28, 2014. The Cash Collateral Order also provides that Debtor must obtain an order confirming Plan no later than January 30, 2015. Although Secured Creditor's counsel had requested that Debtor's counsel make monthly mortgage payments as required by the Cash Collateral Order, Debtor has failed to do so. Debtor is not complying with this Court's order by not paying the basic "price of admission of being in a chapter 11 case", and is now attempting to value the subject property in order to cramdown a debt she was not originally a party to.

10. On September 30, 2014, Debtor filed her Disclosure Statement (docket item no. 69) and chapter 11 Plan (docket item no. 70). Secured Creditor filed Objections to the Disclosure Statement on October 22, 2014 (docket item no. 76). The hearing on approval of Debtor's Disclosure Statement was held on November 5, 2014, where the Court *denied* approval of the Disclosure Statement, and ordered that Debtor file an amended Disclosure Statement.

8.  On November 13, 2014, Debtor filed her Motion to Value. Debtor maintains in her Motion to Value that the value of the subject property is *only* $**600,000.00**. Said valuation appears to significantly *understate* the value of the subject property. Debtor's valuation of $600,000.00 is based on an appraisal, dated August 5, 2014, which was prepared by Tracy L. Griffith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## DEBTOR'S APPRAISAL OF THE SUBJECT PROPERTY IS DEFICIENT

9. On or about October 10, 2014, Secured Creditor conducted an *exterior only* appraisal of the subject property (**Exhibit "A"**), prepared by John C. Pan, which valued the subject property at **$1,000,000.00** ($400,000.00 higher than Debtor's valuation of the subject property). Secured Creditor's appraisal appears to be more in line with the actual value of the subject property, as Zillow.com estimates that the value of the subject property is **$1,114,838.00** (**Exhibit "B"**). Additionally, Zillow also shows that the subject property was listed for sale on August 2, 2009 (when the market was much lower) for **$950,000.00**. Considering the increase in value of homes since August 2, 2009, the value of the subject property appears to be in excess of **$1,000,000.00**.

10. Additionally, Zillow also shows that there is a property located only 0.3 miles from the subject property (10575 Lost Trail Avenue, Shadow Hills, CA 91040) and has the same square footage of the subject property, and is currently being listed for sale for **$1,050,000.00** (**Exhibit "C"**).

11. Further, while Debtor's appraisal used comparables to arrive at a valuation of *only* $600,000.00, it appears that the comparables used by Debtor's appraiser were "hand-picked" to arrive at a valuation most desirable for the Debtor. The three comparables that Debtor's appraiser used were listed on page 2 of the appraisal (docket item no. 80, page 13 of 128). When examining the row which lists the "Sale or Financing Concessions", Debtor's appraisal is silent as to what kind of a transaction was each (arm-length, short-sale, etc) of the three (3) sale comparables. Instead of providing the nature of the transaction, the appraisal states that it is "Not public." Without knowing what kind of a transaction was each comparable, said comparables are not reliable as the sale price of a short-sale property, for example, will vary significantly from a sale pursuant to an arms-length transaction.

12. Debtor's appraisal also contains other defects. The three (3) sale comparables used by the Debtor's appraiser all differ from the "quality of construction" of the subject property. While the subject property was labeled by Debtor's appraiser in "average" condition, all three (3) sale comparables were in "inferior" condition. Further, the dates of sale of each of the three (3) comparables varied from five (5) months to eight (8) months from the time of Debtor's appraisal. It is questionable why Debtor's appraiser did not use comparables who were much more recent. Further, while the age of the subject property is only ten (10) years, all three (3) sale comparables used by Debtor's appraiser were significantly older (comparable #1 was 66 years in age, comparable #2 was 53 years in age, and comparable #3 was 77 years in age).

13. Additionally, while the subject property has 3,881 in sq.ft. of living space, all three (3) sale comparables used by Debtor's appraiser were *significantly* smaller in square footage of living space than the subject property (comparable #1 was only 3,240 sq.ft., comparable #2 was only 2,824 sq.ft., and comparable #3 was only 2,726 sq.ft.). While Debtor's appraiser made adjustments to account for these differences, Debtor's appraiser should have used properties that were much more similar to the subject property (e.g., Secured Creditor's *exterior only* appraisal has two (2) out of four (4) sale comparables that are the same age as the subject property, all comparables in Secured's Creditor's appraisal are of the same condition as the subject property, and two (2) of the four (4) comparables in Secured Creditor's appraisal have the same square footage as the subject property).

<u>ATTEMPTS AT OBTAINING AN EXTERIOR AND INTERIOR APPRAISAL
OF THE SUBJECT PROPERTY</u>

14. Following the filing of the Motion to Value on November 13, 2014, Secured Creditor attempted to arrange for an *exterior* <u>and</u> *interior* appraisal of the subject property, because it did

not want to present this Court with an *exterior* only appraisal. Secured Creditor's counsel, Lior Katz, contacted Debtor's counsel's office by email on November 14, 2014 to inquire as to who could allow access to the property to Secured Creditor's appraisal. The same day, on November 14, 2014, Debtor's counsel, Roksana Moradi informed Secured Creditor's counsel that she should be contacted to arrange for an appraisal of the subject property.

15. On November 21, 2014, Secured Creditor's agent attempted to reach Debtor's counsel, Roksana Moradi, but was unsuccessful in doing so. Secured Creditor's agent left a message for Ms. Moradi to set up the *exterior* and *interior* appraisal of the subject property. Ms. Moradi had informed Secured Creditor's counsel that she has been in contact with Secured Creditor's appraiser, and that she had provided the appraiser's number to the Debtor. To date, Debtor has not contacted Secured Creditor's appraiser, and has not granted Secured Creditor permission to conduct an *interior* inspection of the property, and prepare an *interior* and *exterior* appraisal of the subject property. Normally, Secured Creditor's counsel has no difficulty in working with Debtor's counsel and their clients in resolving these issues. This is the rare exception.

16. Secured Creditor now requests that the Court either deny Debtor's Motion to Value for pursuant to the arguments above, or allow Secured Creditor additional time to obtain an *interior* and *exterior* appraisal of the subject property. The latter request is the *preferred* one.

<u>DEBTOR IS IN VIOLATION OF THIS COURT'S CASH COLLATERAL ORDER</u>

17. Debtor continue to use Secured Creditor's cash collateral generated from the subject property without this Court's permission. The Cash Collateral Order entered by this Court required that Debtor tender monthly *principal and interest* payments of **$2,000.00** *each* beginning with the **September 2014** monthly mortgage payments. To date, <u>no payments of $2,000.00 were received from the Debtor since the Cash Collateral Order was entered</u>. It appears that Debtor has

been using, and is currently using Secured Creditor's cash collateral without the Court's permission in violation of Secured Creditor's loan instruments.  11 U.S.C. §363(c)(2) prohibits such unauthorized use of cash collateral.  See <u>Matter of Kain</u>, 86 B.R. 506 (Bkrtcy.W.D.Mich. 1988).  See <u>In re Tucson Industrial Partners,</u> 129 B.R. 614 (9th Circuit, 1991), vacated as moot 990 F.2d 1099 (9th Cir. 1993).  The <u>Tucson Industrial</u> case, though vacated, properly noted that in resolving questions concerning assignment of rents.

12.  Assignments of rent for security are treated as interests in real property.  Secured Creditors' interest in rents was properly perfected, in accordance with state law, on the date of Debtor's bankruptcy and was not subject to avoidance under bankruptcy strong-arm statute, where a deed of trust holder had recorded assignment in real property records as provided by statute.  See <u>In re Scottsdale Medical Pavillion</u>, 159 BR 295 (9th Cir. BAP 1993).

13.  If the Court finds that the Debtor-in-Possession has failed to fulfill his statutory duty under the Code to segregate cash collateral derived from the subject property and that the Debtor has spent cash collateral without Secured Creditors' or the Court's prior approval, Secured Creditor requests that this Court fashion an appropriate order against the Debtor for such unauthorized use, if any, and prohibit further use of cash collateral by the Debtor.  See <u>In re Williams</u>, 61 B.R. 567 (Bkrtcy. N.D.Tex. (1986).

<u>CONCLUSION</u>

Movant respectfully requests that this Court strike Debtor's Motion to Value as it is based on inadmissible statements by Debtor's retained professional, or continue the hearing (the *preferred* alternative) on the Motion to Value to allow Secured Creditor to obtain an *interior* and *exterior* appraisal of the subject property.

WHEREFORE, Secured Creditor prays as follows:

(1)  That Debtor's Motion to Value be stricken and dismissed, or alternatively;

(2)  That the hearing on the Motion to Value be continued to allow Secured Creditor to obtain an *interior* and *exterior* appraisal of the subject property.

(2)  For attorneys' fees and costs incurred herein.

(3)  For such other relief as this Court deems proper.

DATED: November 26, 2014                    EDWARD G. SCHLOSS

                                    By:  /s/ Edward G. Schloss_____
                                    EDWARD G. SCHLOSS
                                    Attorney for Secured Creditor

S:\OPP\Alvarez.mottovalue.B24645.OPP.doc